Next case, please. 3 10 0678 Chad Peterson, Reverend Paparella v. Busted Prop, Inc. Mr. Paparella. Thank you, Your Honor. May it please the Court, Your Honors, Counsel, good morning. We are here today regarding a matter that was decided at the summary judgment stage before Judge Heddle, Mo Sal County Circuit Court. The facts, as the Court is well aware from reading the briefs, I believe are rather simple in this matter. On or about August 12, 2006, my client, Chad Peterson, was a customer, invitee, at the Busted Prop, which is a tavern located outside the city limits here in Ottawa. While he was at the bar, a fight had broken out inside of the bar, the lights were flipped on, the bar was subsequently closed, and my client, as well as others, went outside, because they were told to leave the bar. While outside in the parking lot, my client, because of the traffic and the amount of people there, was not able to move his car immediately, and thereafter, after he got out of his car, he had an exchange of words with a woman who was there, and subsequently was punched from a blind side, and he suffered severe injuries to his eye socket. As the Court is well aware, the review standard is de novo at this point in the proceedings, and I'm not going to recite that, as I know all the justices are certainly aware thereof. All the inferences at this stage are to go to the plaintiff, who is the non-moving party, and all the facts are to be construed in a manner which favors the plaintiff accordingly. The issue here is whether or not the trial court erred that the defendant barred and not owe the plaintiff a duty in this matter. Typically, in Illinois, a property owner or an individual doesn't have a duty to another individual to protect them from the third-party criminal acts of another individual. However, property owners do have a duty to protect from criminal acts of a third party when there's, one, a special relationship, and, two, when the criminal act was reasonably foreseeable. And I think that's, when analyzing whether or not there's a duty here, our main question is not whether or not there was a special relationship. I believe that's conceded in the Appellee's brief as well. My client was a customer at the bar. He was certainly a business invitee of the bar. He was on their premises that evening. He was on their premises at the time that the incident occurred outside. The question is, is whether or not the criminal act of Albert Ford was reasonably foreseeable to the defendant. And I suggest that when you look at the facts, that it is certainly reasonably foreseeable. In the facts here, Ford was at the bar. There was a fight inside the bar that he was involved in. And the one point which I think is crucial in determination of this matter, which I feel the trial court erred on, is the characterization of what kind of fight this was. What did you show that showed any awareness by the bar or the bar personnel that Ford was involved in the fight or your client was involved in the fight? My client was not involved in the fight inside the bar, Your Honor. The facts that I believe lend credence to the fact that Ford was involved is there was this large fight inside. Ford was involved along with some friends. They were pushing other individuals. There was a pylon inside. People were circling about. And then as this fight is breaking up, the lights are flipped on and everybody's told to leave. And what they told was the last call. My recollection is they were told to leave, Your Honor. I don't remember the characterization of last call. The bar was cleared out is my understanding. So was there any evidence that Mr. Peterson was involved in this pushing incident in the bar? None whatsoever, Your Honor. I think he had indicated, I know that he indicated in his discovery deposition that the first time he had seen Mr. Ford was when he was standing in line to use the washroom. And thereafter, when he came out of the washroom is when he saw Mr. Ford and his friends involved in this altercation with other individuals. So the only evidence you have is that Mr. Peterson is saying Ford's in the bar and he was in a pushing incident or something, right? Correct. Does that then go to the bar owner and bar personnel? Well, I believe it doesn't, Your Honor. And the reason why is when you couple that with the fact that the lights were flipped on as this fight's happening and they're told the bar is closed, I think it shows an awareness of the hostility that happened inside and it's important to note this is a small bar with over 100 people inside. There was a couple hundred people outside because of some wakeboarding competition. It was very busy. So what you're saying, the general principle is it's not with the Ford who's involved who eloquently was involved in the altercation with partner Mark but you're saying that it was foreseeable that there was violence in the bar that would be taken outside. Correct. Regardless of the individuals? Well, I don't think regardless of the individuals. My contention is that the bartender could see the fight. Mr. Ford was involved in the fight and that's when she turns the lights on. What was bartender? Anybody? What was the evidence that the bartender saw this? I'm sorry? What was the evidence that the bartender saw this incident? Circumstantially, Your Honor, I'd indicate that the evidence was that the lights were flipped on. But didn't your own client say and they threw the lights on to the bar and told everybody, you know, last call, leave. Right. They flip the lights on and tell everyone to leave. But he said last call. I've been to a few saloons in my day and that usually means that you get to buy one more drink on the way out. It can mean that, Your Honor. If recollection serves me. You've heard from friends. I've heard from friends. It also means you don't leave but you just have one last drink in the process. As I indicated, my belief is when we look at the facts, the lights going on and they're telling people it's time to get out of there that they're aware of the hostility that happened inside the bar. If not directly, at least circumstantially by the lights coming on. Was it closing time? It was not closing time. My understanding is this happened about 1.30 in the morning and that particular tavern I've heard closes at about 4 a.m. Is there evidence of that? I don't believe there is in the record. Your Honor. And when we look at the facts herein, the bar is closed, they emptied it to the parking lot and we have this gentleman, Mr. Ford, who my client identifies several months later when he sees this picture in the paper for an unrelated harass. My client indicates, yeah, that was the guy. That was the guy who not only struck me but the guy who was involved in the fight inside the bar. My client's contention is that because he was an invitee on the premises and because of the knowledge of the bar that there was this fight inside and they turned the lights on and sent everyone outside that it's certainly reasonably foreseeable that a person who's engaged in a fight inside the bar is going to carry it outside. There's no indication in the record whatsoever that bouncers were involved. And I believe that Case Law holds that a criminal act is reasonably foreseeable when the circumstances are such to put a reasonably prudent person on notice of the probability of an attack or when a serious physical altercation has already begun. Let me just ask you, when you say a serious physical altercation, these are your client's words. As soon as I came out, there was a commotion in the bar and within five minutes I noticed him and one of his friends just in minor fisticuffs and bushing and stuff and they threw the lights on to the bar and told everybody, you know, last call, leave. Now, if he didn't know this guy, he was able to surmise that this guy that he was in these minor fisticuffs with was a friend. So, your own client described this as a bushing incident in minor fisticuffs between friends. I don't believe that that's accurate the way it was friends, Mr. Ford and friends involved in the fisticuffs with other individuals. I think when you look at the deposition as a total, that becomes clear. And I think that that's a key point. This isn't friends that were pushing each other, having fun, shoving each other, what have you inside the bar. This is a group of friends who were pushing and engaging in minor fisticuffs, in my client's words, with other individuals inside the bar and then there's a pylon. The pylon occurs and on top of a pylon, people are circling around. In a crowded bar, I think what a reasonable inference would be is that this is a serious altercation. Mr. Paparella, if we assume, as you're asking us to do, I think that this was a serious altercation that the bartender knew that it had happened and that that was what prompted her to turn off the lights and say last call, what is the evidence that it would be reasonably foreseeable to her and by attribution to the corporation or to the bar that if the fight were to spill out into the parking lot, it would involve anybody other than the people who were already involved in that altercation? I don't think that the... I understand what your question is, Your Honor, but I don't think that she would have the reasonable foreseeability for, as it relates to, I guess the way to answer the question would be is that I think when she sees this altercation inside the bar and she sees a gentleman she knows to be physically violent inside the bar, turning him outside with other innocent individuals who just happened to be there allows for foreseeability. I think when you have the fact that he's involved in this incident inside the bar and then you turn him loose outside with everyone else, I think it's certainly reasonably foreseeable that his actions from inside the bar are going to continue as he goes on. Well, what evidence is there that this poor gentleman was guilty of anything inside the bar? In other words, was he the aggressor in this incident in the bar or was he Well, the testimony that we have is my client saying that he was engaged in this pushing match, in this pile-on. I don't think there is... Well, if there was a pushing match, there's a pusher and a pushy and back and forth, but that's what that suggests, so who instigated it? In other words, who was the aggressor in that incident? The record doesn't indicate who the aggressor was in this fight inside the bar, Your Honor. Is there any evidence one way or another? No, Your Honor. Based upon the special relationship between my client and the bar itself, and because I believe that when one looks at whether or not there's a duty or whether or not there's reasonable foreseeability of the... of Mr. Ford's behavior, when looking at all the evidence in a light most favorable to the plaintiff, I believe that the plaintiff satisfies the burden and that whether or not there's been a breach of the duty should be determined by a jury. Accordingly, I'm asking this court to find that the summary general was inappropriate and remand accordingly. Unless there's any other questions, that's all I have for you. Thank you very much. Thank you, Your Honor. Mr. Kruger? Your Honor, it's clear from the record that Albert Hook's criminal acts were not reasonably foreseeable. There's no evidence that anybody associated with the bar had knowledge of this incident, this confrontation, this frucus inside the bar. There's no evidence that any employee of the bar saw Mr. Ford. Plain and simple, that's what the evidence is. Counsel for the plaintiff talks about, well, you had the situation with the lights going on and that type of thing. I think we've talked about that already. But even if you want to make that logical leap, what did they see? Again, there's no evidence of what whoever was in charge of lights saw. In the light most favorable to the plaintiff, you apparently have some sort of pushing contest with Mr. Ford and one of his friends. Also, Grant Combs talks about that in his deposition, too. The conduct here is not the kind of conduct which makes future criminal acts reasonably foreseeable. The standard is what can you objectively reasonably expect, not what's conceivable. The plaintiff says, well, the bar should call the police. For what? You have this couple of people pushing each other. If you look at the Wilkes case, if you look at the Yangas v. Charlie Club case, if you look at Lewis v. Raspberry's case, the bar does not necessarily need to call the police. Certainly, obviously, there are some instances where you do, but generally speaking, the bar does not have that duty. The plaintiff also says, well, the bar should have escorted Mr. Ford out. Why him? Again, now you're trying to figure out and pick out who's the aggressor. That Wilkes case talks about that, where, hey, we're not going to put on the bar the duty of trying to figure out who's an aggressor. The plaintiff also says, well, you just can't send everybody out in the parking lot. Well, that's what happens when a bar closes. People leave. My church is like that. I go to a big church. When church is over, everybody leaves and goes in the parking lot. Now, you understand that people at church probably aren't drinking. But I've got that one covered, too, because if you look at a ball game, where they serve alcohol, again, the game's over, boom, everybody's out in some of these parking lots of huge lines. That argument just doesn't hold water in this situation or, frankly, in most situations. Even if you assume that the bar saw something, whatever it was, their response was reasonable, that they didn't reach any duty here. The other thing that's important to note here is there's really no nexus between what apparently happened inside the bar and what happened in the parking lot. In the bar, you have Mr. Ford apparently involved with some other people, and then when it goes into the parking lot, he's in his car, apparently, getting ready to go home, at which time the plaintiff has an altercation with Candy Davis. We're not even talking about the same people or the same scenario. You have a situation where you have this verbal altercation with Mr. Peterson and Candy Davis, and then Mr. Ford apparently gets out of his car and punches Mr. Peterson. There's no nexus here. We can't look at these things in hindsight. The case law is very, very clear about that. Don't look at it in hindsight. Look at what are the facts of the case, what knowledge, actual knowledge, does the defendant or does the bar have, and that's where we go. It's very clear here that there's no duty, and there's certainly no breach of duty on the part of the bar. That's all I have. Do you have questions? Thank you, Mr. Peterson. Mr. Popper, I want some rebuttal. Just briefly, Your Honors. First and foremost, the verbal altercation that happened outside was between my client and Ms. Davis over whether or not he allegedly hit her car. It had nothing to do with the striking that happened out in the parking lot. And there's no indication from the record that my client started that altercation or was the aggressor there from. I think when you look at the totality of the circumstances here, and the initial argument as well in my briefs, that when you look at all those, it certainly is reasonably foreseeable that the bar would expect that a person who's involved in a fight inside the bar is going to carry that outside of the bar when they send everyone out into the parking lot. What's the relationship between this incident between your client and the young woman with the car and what was going on inside? Other than the fact that everyone was outside leaving the bar, there's no relationship between what happened with my client and what happened inside the bar. Doesn't it look like that your client getting punched was a result of the dispute he was having with this young woman as opposed to a carryover of the fight inside the bar and outside of the bar? I would say when one looks at the facts that that could certainly be, you know, one could certainly understand that interpretation of them. However, my client wasn't involved in the altercation inside of the bar so I don't know that that's, you know, I don't know that there was a quote-unquote cooling period whereby my client and Mr. Hook had been involved in something inside the bar and then they're outside the bar and my client gets hit. But when one looks at the facts with the lights being flipped on in the bar, I think that there's certainly knowledge, circumstantially if not direct, that the bar had knowledge of the fight, they saw the actors in the fight, and they sent everyone outside. And the analogy that I made at the trial court was this is no different than a fight occurring in one side of the room, one bar of a bar room, and sending all the individuals into another area of the bar. Because that's, in my opinion, that's what they did here. They took everybody who was inside and sent them outside. It's still their property, it's still part of their operation. Based upon that, there certainly was a special relationship. I think it was reasonably perceivable, I'm asking that you deny the motion for summary judgment. You're saying in a simplistic way that if there's violence at the bar, okay, and the bar moves that by their acts, moves that violence into the parking lot, that they're responsible for that. That is what I'm saying. I think that the acts that happened in the parking lot are foreseeable as a result of them moving what was the situation inside of the bar. So identity of specific individuals who were in the bar, nor necessarily identity of knowledge of specific individuals who might be out in the parking lot, even just pulling into the parking lot never having gone into the bar is irrelevant. Well, I think that when one looks at the facts here, that there was knowledge of the individual who was involved inside of the bar. I mean, I understand what Your Honor is saying with regards to someone maybe just pulled into the parking lot, but this was a situation where the guy was clearly in the bar. Well, I'm just trying to see how far you want to go with this. I mean, how far is the responsibility and liability of the bar owner? Well, I believe when the incident occurs inside, that should go as far as anyone on the premises, whether it be parking lot or inside. If there are no other questions, I'm completed, Your Honor. Thank you. Thank you. And thank you, Mr. Krueger, both of you, for your arguments here today. The matter will be taken under advisement. Written disposition will be issued right now.